1

2

3

4

5

6

7

8                    **IN THE UNITED STATES DISTRICT COURT**

9                    **FOR THE EASTERN DISTRICT OF CALIFORNIA**

10

11   ANDRE FLOYD,                              CASE NO. CV-F-03-6155 REC DLB HC

12              Petitioner,                    FINDINGS AND RECOMMENDATIONS
                                               REGARDING AMENDED PETITION FOR
13        vs.                                  WRIT OF HABEAS CORPUS

14   A.K. SCRIBNER,                            [Doc. 35]

15              Respondent.
     _____/

16

17        Petitioner is a state prisoner proceeding pro se with a petition for writ of habeas corpus pursuant

18   to 28 U.S.C. § 2254.

19                              PROCEDURAL HISTORY

20        On September 1, 2000, Petitioner was convicted by jury in the Kern County Superior Court

21   of possession of cocaine, and was sentenced to a term of 28 years to life in state prison.  (CT 249,

22   271.)[1]

23        Petitioner filed a timely appeal to the California Court of Appeal, Fifth Appellate District.

24   On February 1, 2002, the Court of Appeal affirmed Petitioner's conviction and sentence in a partially

25   published opinion.  (Lodged Doc. 5.)

26        Petitioner filed a petition for rehearing in the Fifth District Court of Appeal, and the Court

27   _____

28        [1]  "CT" refers to Clerk's Transcripts, and "RT" refers to Reporter's Transcripts.

                                        1

1  subsequently modified its opinion.  (Lodged Docs. 6, 7.)

2      Petitioner timely petitioned the California Supreme Court for review.  (Lodged Doc. 8.)

3  Review was granted and after briefing by the parties (Lodged Doc. 9 [Petitioner's brief on the

4  merits]; Lodged Doc. 10 [People's brief on the merits]; Lodged Doc. 11 [Petitioner's reply brief]), on

5  July 21, 2003, the California Supreme Court issued an opinion affirming Petitioner's conviction and

6  sentence.  (Lodged Doc. 12; see also People v. Floyd, 31 Cal.4th 179 (2003).)

7      On August 25, 2003, Petitioner filed the instant petition for writ of habeas corpus.  That

8  petition contained four claims, the last of which (alleging a double jeopardy violation) was

9  unexhausted.  Accordingly, on March 30, 2004, Respondent filed a motion to dismiss the petition

10  because it was a "mixed" petition containing both exhausted and unexhausted claims.

11      On May 21, 2004, this Court granted Petitioner 25 days within which to withdraw his double

12  jeopardy claim from the petition and request that this Court hold the petition in abeyance pending the

13  resolution of the double jeopardy claim in state court.  On June 7, 2004, Petitioner took advantage of

14  this Court's order, and moved to withdraw the double jeopardy claim from the petition.  On June 18,

15  2004, this Court ordered that the double jeopardy claim be withdrawn, and ordered that the case be

16  held in abeyance while Petitioner completed the state court exhaustion.

17      On September 29, 2004, the California Supreme Court denied Petitioner's exhaustion

18  petition, which had been filed on December 1, 2003.  (Respondent's Exhibits A & B, attached to

19  Answer.)  Petitioner notified this Court of that disposition on or about October 12, 2004.  On

20  October 27, 2004, this Court lifted the stay and directed Petitioner to file an amended petition.

21      On November 29, 2004, this Court directed Respondent to address all claims, including those

22  in the original and amended petition.

23      Respondent filed an amended answer on May 26, 2005, and Petitioner filed a traverse on

24  August 1, 2005.

25  ///

26

27

28

2

1

STATEMENT OF FACTS[2]

2

        On April 30, 2000, Bakersfield police responded to the reported natural death
of [Petitioner's] long-term girlfriend. [Petitioner] was distraught and crying.  At some

3

point, while standing near the body of his girlfriend, [Petitioner] began a sustained
bout of coughing.  Officer Damacio Diaz saw a small plastic baggie fly out of

4

[Petitioner's] mouth and land on the deceased.  As soon as it landed, [Petitioner]
grabbed the baggie and shoved it underneath the body.  Officer Diaz retrieved the

5

baggie, which contained 0.25 grams of cocaine.
        A jury convicted [Petitioner] of possession of cocaine (Health & Saf. Code, §

6

11350, subd. (a)) and found he had five prior felony convictions within the meaning
of the "Three Strikes" law; two attempted robberies and an assault with a deadly

7

weapon causing great bodily injury on October 21, 1998; a burglary on October 30,
1984; and a burglary on January 7, 1985.  On November 9, 2000, the trial court

8

sentenced [Petitioner] to a third strike term of 25 years to life.

9

(Lodged Doc. 12, at 2.)

10

DISCUSSION

11

A.     Jurisdiction

12

        Relief by way of a petition for writ of habeas corpus extends to a person in custody pursuant

13

to the judgment of a state court if the custody is in violation of the Constitution or laws or treaties of

14

the United States.  28 U.S.C. § 2254(a); 28 U.S.C. § 2241(c)(3); Williams v. Taylor, 529 U.S. 362,

15

375, 120 S.Ct. 1495, 1504, n.7 (2000).  Petitioner asserts that he suffered violations of his rights as

16

guaranteed by the U.S. Constitution.  The challenged conviction arises out of the Kern County

17

Superior Court, which is located within the jurisdiction of this Court.  28 U.S.C. § 2254(a); 2241(d).

18

        On April 24, 1996, Congress enacted the Antiterrorism and Effective Death Penalty Act of

19

1996 ("AEDPA"), which applies to all petitions for writ of habeas corpus filed after its enactment.

20

Lindh v. Murphy, 521 U.S. 320, 117 S.Ct. 2059, 2063 (1997; Jeffries v. Wood, 114 F.3d 1484, 1499

21

(9th Cir. 1997), cert. denied, 522 U.S. 1008, 118 S.Ct. 586 (1997) (quoting Drinkard v. Johnson, 97

22

F.3d 751, 769 (5th Cir.1996), cert. denied, 520 U.S. 1107, 117 S.Ct. 1114 (1997), overruled on other

23

grounds by Lindh v. Murphy, 521 U.S. 320, 117 S.Ct. 2059 (1997) (holding AEDPA only applicable

24

to cases filed after statute's enactment).  The instant petition was filed after the enactment of the

25

AEDPA and is therefore governed by its provisions.

26

27

     [2] The statement of facts is taken from the published opinion of the California Supreme Court (see Lodged Doc. 12,
at 2; see also People v. Floyd, 31 Cal.4th 179 (2003)), as the Court finds the California Supreme Court's summary is a correct
and fair summary of the facts of the case.

28

3

1   B.      Standard of Review

2        This Court may entertain a petition for writ of habeas corpus "in behalf of a person in custody

3   pursuant to the judgment of a State court only on the ground that he is in custody in violation of the

4   Constitution or laws or treaties of the United States."  28 U.S.C. § 2254(a).

5        The AEDPA altered the standard of review that a federal habeas court must apply with

6   respect to a state prisoner's claim that was adjudicated on the merits in state court. Williams v.

7   Taylor, 120 S.Ct. 1495, 1518-23 (2000).  Under the AEDPA, an application for habeas corpus will

8   not be granted unless the adjudication of the claim "resulted in a decision that was contrary to, or

9   involved an unreasonable application of, clearly established Federal law, as determined by the

10  Supreme Court of the United States;" or "resulted in a decision that was based on an unreasonable

11  determination of the facts in light of the evidence presented in the State Court proceeding." 28

12  U.S.C. § 2254(d); Lockyer v. Andrade,123 S.Ct.1166 (2003) (disapproving of the Ninth Circuit's

13  approach in Van Tran v. Lindsey, 212 F.3d 1143 (9th Cir. 2000)); Williams v. Taylor, 120 S.Ct.

14  1495, 1523 (2000).  "A federal habeas court may not issue the writ simply because that court

15  concludes in its independent judgment that the relevant state-court decision applied clearly

16  established federal law erroneously or incorrectly."  Lockyer, at 1175 (citations omitted).  "Rather,

17  that application must be objectively unreasonable."  Id. (citations omitted).

18       While habeas corpus relief is an important instrument to assure that individuals are

19  constitutionally protected, Barefoot v. Estelle, 463 U.S. 880, 887, 103 S.Ct. 3383, 3391-3392 (1983);

20  Harris v. Nelson, 394 U.S. 286, 290, 89 S.Ct. 1082, 1086 (1969), direct review of a criminal

21  conviction is the primary method for a petitioner to challenge that conviction.  Brecht v.

22  Abrahamson, 507 U.S. 619, 633, 113 S.Ct. 1710, 1719 (1993).  In addition, the state court's factual

23  determinations must be presumed correct, and the federal court must accept all factual findings made

24  by the state court unless the petitioner can rebut "the presumption of correctness by clear and

25  convincing evidence."  28 U.S.C. § 2254(e)(1); Purkett v. Elem, 514 U.S. 765, 115 S.Ct. 1769

26  (1995); Thompson v. Keohane, 516 U.S. 99, 116 S.Ct. 457 (1995); Langford v. Day, 110 F.3d 1380,

27  1388 (9th Cir. 1997).

28  ///

4

1    C.      Double Jeopardy Violation

2          Petitioner contends that his sentence violates the Double Jeopardy Clause because his 25-

3    year-life-sentence under California Three Strike's law was based, in part, on his prior serious and

4    violent felonies, resulting in what he claims double punishment.  Petitioner presented this claim to

5    the California Supreme Court, which rejected the claim without comment.  (Respondent's Exhibit B,

6    attached to Answer.)

7          The U.S. Supreme Court has held double jeopardy implications inapplicable to sentencing

8    proceedings because the determinations at issue doe not place a defendant in jeopardy for an offense.

9    Monge v. California, 524 U.S. 721, 726, 118 S.Ct. 2246, 2249 (1998) (citing Nichols v. United

10   States, 511 U.S. 738, 747, 114 S.Ct. 1921, 1927 (1994) (noting that repeat-offender laws "'penaliz[e]

11   only the last offense committed by the defendant'")).  The U.S. Supreme Court has held that

12   recidivist statutes do not violate double jeopardy because "the enhanced punishment imposed for the

13   [present] offense 'is not to be viewed as ... [an] additional penalty for the earlier crimes,' but instead

14   as 'a stiffened penalty for the latest crime, which is considered to be an aggravated offense because a

15   repetitive one.'" Witte v. United States, 515 U.S. 389, 400, 115 S.Ct. 2199 (1995) (quoting Gryger v.

16   Burke, 334 U.S. 728, 732, 68 S.Ct. 1256 (1948)); see also Moore v. Missouri, 159 U.S. 673, 677, 16

17   S.Ct. 179 (1895) (under recidivist statute, "the accused is not again punished for the first offense"

18   because "'the punishment is for the last offense committed, and it is rendered more severe in

19   consequence of the situation into which the party had previously brought himself'").

20         Further, the Ninth Circuit has also repeatedly found that recidivism statutes do not violate the

21   Double Jeopardy Clause.  In United States v. Kaluna, 192 F.3d 1188, 1198-99 (9th Cir. 1999) (en

22   banc), the court rejected a challenge to the federal three-strikes law based upon double jeopardy,

23   quoting Gryger.  The Ninth Circuit has explained that if it is not unconstitutional for the federal

24   courts to impose such sentencing schemes, it is likewise not unconstitutional for state courts to do so.

25   Peltier v. Wright, 15 F.3d 860, 862 (9th Cir. 1994).

26         Because Petitioner's prior offenses were used to invoke California's Three Strikes law as a

27   sentencing factor and not an element of the substantive criminal offense, Petitioner was not placed in

28   double jeopardy for an offense, but was instead punished based on status as a repeat offender. Monge

5

1    v. California, 524 U.S. at 726.  Thus, insofar as Petitioner alleges a violation of double jeopardy, his

2    claim is without merit and must be denied.  The state courts' determination of this issue was not

3    contrary to, or an unreasonable application of, clearly established Supreme Court precedent.

4    D.      California's Proposition 36

5           Petitioner contends that he was entitled to the ameliorative effects of California's Proposition

6    36, which was passed and became effective prior to the date on which Petitioner's conviction

7    became final.  Respondent argues that this claim raises only an interpretation of state law, and is

8    therefore not cognizable pursuant to § 2254.

9           Initially, the Court notes that Proposition 36, the Substance Abuse and Crime Prevention Act

10   of 2000, was approved by the voters on November 7, 2000, and took effect on July 1, 2001.  (Cal.

11   Penal. Code §§ 1210, 1210.1.)  Proposition 36 requires the court to grant probation and drug

12   treatment to any defendant convicted of a nonviolent drug possession offense and prohibits

13   incarceration as a condition of probation.  (Cal. Penal. Code § 1210.1, subd. (a).)

14          The role of this Court on federal collateral review of a state criminal conviction is limited to

15   determining whether the Petitioner's federal constitutional or other federal rights have been violated

16   and does not extend to review a state's application of its own laws.  Jackson v. Ylst, 921 F.2d 882,

17   885 (9th Cir. 1990); see e.g. Cacoperdo v. Demosthenes, 37 F.3d 504, 507 (9th Cir. 1994)

18   (recognizing that the decision whether to impose sentences concurrently or consecutively is a matter

19   of state criminal procedure and is not within the purview of federal habeas corpus).  Federal courts

20   must defer to the state courts' interpretation of state sentencing laws.  Estelle v. McGuire, 502 U.S.

21   62, 67-68 (1991); Bueno v. Hallahan, 988 F.2d 86, 88 (9th Cir. 1993).  Absent a showing of

22   fundamental unfairness, a state court's application or misapplication of its own sentencing laws does

23   not generally justify federal habeas relief.  Christian v. Rhode, 41 F.3d 461, 469 (9th Cir. 1994).  "So

24   long as the type of punishment is not based upon any proscribed federal grounds such as being cruel

25   and unusual, racially or ethnically motivated, or enhanced by indigency, the penalties for violations

26   of state statutes are matters of state concern."  Makal v. Arizona, 544 F.2d 1030, 1035 (9th Cir.

27   1976).

28          This Court finds that Petitioner's sentence was not fundamentally unfair.  Estelle v. McGuire,

6

502 U.S. 62, 67-68 (1991); <u>Bueno v. Hallahan</u>, 988 F.2d at 88. As the California Supreme Court explained, the savings clause in Proposition 36 operates to make the statute apply only prospectively to drug offenders convicted after July 1, 2001. <u>People v. Floyd</u>, 31 Cal.4th at 182-188. As the California Supreme Court found that Congress did not intend Proposition 36 to apply to cases in which the conviction may not have yet become final, this Court finds that Petitioner's sentence was not fundamentally unfair.

E.      <u>Equal Protection Violation</u>

        Petitioner contends that he is being treated differently from those offenders whose convictions post-date the effective date of Proposition 36 and who are therefore permitted to benefit from drug treatment. Petitioner's claim is, in essence, that two separate classes of defendants are created by applying Proposition 36 prospectively to only those defendants who were convicted after the effective date of July 2001, wherein those convicted prior to that date, whose conviction may not have yet become final do not receive the benefit of the lesser punishment.

        The Supreme Court has held that the equal protection clause means "that no State shall deny to any person within its jurisdiction the equal protection of the laws, which is essentially a direction that all persons similarly situated should be treated alike." <u>City of Cleburne, Texas v. Cleburne Living Center</u>, 473 U.S. 432, 439, 105 S.Ct. 3249, 3254 (1985); <u>Clark v. California</u>, 123 F.3d 1267, 1270 (9th Cir. 1997). The first step in any equal protection analysis is to identify petitioner's classification or group. <u>Freeman v. City of Santa Ana</u>, 68 F.3d 1180, 1187 (9th Cir. 1995). Petitioner must show that the law has been applied in a discriminatory manner on him or imposes different burdens on different groups. <u>Id.</u>; <u>Christy v. Hodel</u>, 857 F.2d 1324, 1331 (9th Cir. 1988). The second step requires the Court to determine the level of scrutiny with which the Court should review the statute. <u>Freeman</u>, 68 F.3d at 1187.

        A statutory sentencing scheme that does not disadvantage a suspect class or infringe upon the exercise of a fundamental right, as is the case here, is subject only to rational basis scrutiny. <u>United States v. Harding</u>, 971 F.2d 410, 412 (9th Cir. 1992). Because prisoners are not a suspect class, the distinction between the two groups must only satisfy the rational basis test. <u>Moss v. Clark</u>, 886 F.2d 686, 690 (4th Cir. 1989); <u>City of Cleburne v. Cleburne Living Center</u>, 473 U.S. 432, 440-42 (1985).

1   The statute can only be disturbed if Petitioner can prove "that there exist no legitimate grounds to

2   support the classification." Id. at 413 (citing Minnesota v. Clover Leaf Creamery Co., 449 U.S. 456,

3   464 (1981)).

4        In rejecting Petitioner's claim, the California Supreme Court, after engaging in an extensive

5   review of its prior case law, and the law of other jurisdictions, concluded that the mere fact that a

6   statute reduces punishment prospectively is not an equal protection violation. People v. Floyd, 31

7   Cal.4th at 188-192. As the California Supreme Court stated, the fact that the "Legislature properly

8   may specify that such statutes are prospective only, to assure that penal laws will maintain their

9   desired deterrent effect by carrying out the original prescribed punishment as written" supports the

10  rational basis for the distinction between those convicted before and after the effective date of the

11  statute. (Lodged Doc. 12, at 10, People v. Floyd, 31 Cal.4th at 188.) Congress made a rational and

12  knowing decision that Proposition 36 would apply only to those defendants that were not yet

13  convicted at the time of its effective date. Id.

14       In his traverse, Petitioner contends that the California Supreme Court's decision is contrary to

15  In re Kapperman, 11 Cal.3d 542 (1979), which held that a newly enacted state statute concerning

16  presentence custody credit applied to those persons who were delivered to state custody before or

17  after the effective date of the statute. People v. Floyd, 31 Cal.4th at 892. The California Supreme

18  Court rejected Petitioner's reliance on Kapperman stating:

19           Before we addressed [Kapperman's] claim, however, we made an '[i]nitial
         observation: 'we point out that this case is not governed by cases (e.g., In re Estrada,
20       63 Cal.2d 740, 744, 48 Cal.Rptr. 172, 408 P.2d 948[ ]) involving the application to
         previously convicted offenders of statute lessening the *punishment* for a particular
21       offense. The Legislature properly may specify that such statutes are prospective only,
         to assure that penal laws will maintain their desired deterrent effect by carrying out
22       the original prescribed punishment as written. [Citation.] The People herein do not
         contend that retroactive application of section 2900.5 would interfere with the
23       foregoing public purpose.' (*Kapperman*, *supra*, 11 Cal.3d at p. 546, 114 Cal.Rptr. 97,
         522 P.2d 657.) This case, by contrast, does involve a statute lessening punishment for
24       particular offenses, and retroactive effect of the statute would interfere with the
         foregoing public purpose.

25  (Lodged Doc. 12 at 12-13; People v. Floyd, 31 Cal.4th at 190.)   Accordingly, Petitioner's reliance

26  on Kapperman, is misplaced and was specifically rejected by the California Supreme Court.

27  Furthermore, Petitioner's reliance in In re DeLong, 93 Cal.App.4th 562 (2001), is also misplaced.

28  First, DeLong is factually distinguishable. There, DeLong was found guilty of felony cocaine

8

possession in May 2001, but the sentencing hearing was continued to two weeks after Proposition 36 took effect, and the state Court of Appeal determined that the defendant had "not yet been convicted as of that date and thus was eligible for sentencing pursuant to Proposition 36." In re DeLong, at 570.  Here, by contrast, Petitioner was both convicted and sentenced prior to the effective date of Proposition 36, only his direct appeal was not yet final at the time of the effective date.  That issue was not addressed in DeLong, but was specifically rejected by the California Supreme Court in Petitioner's underlying direct appeal.  Because the state courts' determination of this issue was not contrary to, or an unreasonable application of, clearly established Supreme Court precedent, Petitioner's claim must be rejected.

F.    Cruel and Unusual Punishment Claim

Petitioner contends that his sentence of 25 years to life under California's Three Strikes law is cruel and unusual punishment.

As Respondent points out, procedurally, this claim stands in a slightly different posture than the preceding claims.  Although the claim was raised in Petitioner's petition for review in the California Supreme Court (see Lodged Doc. 8, Claim III), and briefed by the parties (see Lodged Docs. 9, 10, and 11), prior to oral argument the California Supreme Court limited the issues to be discussed at oral argument.  (See Exhibit C, attached to Respondent's Answer, docket entry of April 16, 2003.)  In its published written opinion, the California Supreme Court did not address the cruel and unusual punishment claim.  California Rules of Court, rule 29(b)(3), specifies that "[t]he court need not decide every issue the parties raise or the court specifies."  Thus, although the issue was fully briefed and fairly presented to the California Supreme Court, it appears not to have decided the issue and despite its initial grant of review, the Court, in effect, reconsidered and effectively denied review as to that claim.  In such situations, this Court "looks through" that decision and presumes it adopted the reasoning of the California Court of Appeal, the last state court to have issued a reasoned opinion. See Ylst v. Nunnemaker, 501 U.S. 797, 804-05 & n. 3, 111 S.Ct. 2590, 115 L.Ed.2d 706 (1991) (establishing, on habeas review, "look through" presumption that higher court agrees with lower court's reasoning where former affirms latter without discussion); see also LaJoie v. Thompson, 217 F.3d 663, 669 n. 7 (9th Cir.2000) (holding federal courts look to last reasoned state

9

1   court opinion in determining whether state court's rejection of petitioner's claims was contrary to or

2   an unreasonable application of federal law under § 2254(d)(1)).

3       Beginning with an analysis of the Supreme Court's most recent opinions, in Lockyer v.

4   Andrade, 538 U.S. 63 (2003), the Supreme Court discussed the current state of Eighth Amendment

5   proportionality review and held that the only clearly established governing legal principle is that a

6   "gross disproportionality" review applies to criminal sentences for a term of years.  Id. at 72.  Citing

7   extensively to its past cases dealing with criminal sentencing and proportionality under the Eighth

8   Amendment, the Court acknowledged that it has "not established a clear and consistent path for

9   courts to follow."  Id.

10      The Supreme Court held that "the only relevant clearly established law amenable to the

11  'contrary to' or 'unreasonable application of' frame work is the gross disproportionality principle,

12  the precise contours of which are unclear, applicable only in the 'exceedingly rare' and 'extreme'

13  case."  Id.   The Court analyzed Andrade's sentence under Rummel v. Estelle, 445 U.S. 263 (1980),

14  Solem v. Helm, 463 U.S. 277 (1983) and Harmelin v. Michigan, 501 U.S. 957 (1991), and held that

15  the state court "did not confron[t] a set of facts that are materially indistinguishable from a decision

16  of this Court and nevertheless arrive at a result different from our precedent."  Id. at 1173-1174.

17  Using section 2254(d)(1)'s "unreasonable application" clause, the Court also held that it was not

18  objectively unreasonable for the California Court of Appeal to conclude that the contours of the

19  gross disproportionality principle permitted an affirmance of Andrade's Three Strikes sentence.  Id.

20  at 75-77.

21      In Ewing v.  California,538 U.S. 11 (2003), the Supreme Court again reviewed the

22  constitutionality of a Three Strikes sentence of 25 years to life for stealing three golf clubs.  After

23  reviewing the Court's Eighth Amendment jurisprudence, the Court chose to adopt Justice Kennedy's

    view [3] that:

24          [There are] four principles of proportionality review-- the primacy of the legislature;
25          the variety of legitimate penological schemes; the nature of our federal system; and,
            the requirement that proportionality be guided by objective factors– that inform the
26          final one: The Eighth Amendment does not require strict proportionality between the

27  _____

28          [3]As expressed in his concurring opinion in Harmelin v. Michigan, 501 U.S. 957, 1001 (1991)(citing Solem v. Helm,
    463 U.S. 277, 288 (1983).

1    crime and the sentence.  Rather, it forbids only extreme sentences that are 'grossly
2    disproportionate' to the crime.

3    Ewing, at 23.

4         Recognizing that state legislatures have a right to formulate penological schemes consistent

5    with the state's policy goals and free from federal intrusion, the Court validated the California Three

6    Strikes law, stating "[s]electing the sentencing rationales is generally a policy choice to be made by

7    the state legislatures, not the federal courts." Id. at 25.  The Court deferred to the California

8    Legislature's policy judgement to enact a tough recidivism statute and held that states have "a valid

9    interest in deterring and segregating habitual criminals." Id. (citing Parke v. Raley, 506 U.S. 20, 27
10   (1992)).

11        In conducting a proportionality review of Ewing's sentence, the Court stated, "[i]n weighing

12   the gravity of Ewing's offense, we must place on the scales not only his current felony, but also his

13   long history of felony recidivism." Id. at 29.  The Court noted that "any other approach would fail to

14   accord proper deference to the policy judgments that find expression in the legislature's choice of

15   sanctions." Id.  In imposing a Three Strikes sentence on a recidivist criminal, the Court recognized

16   the state's interest in dealing "in a harsher manner with those who by repeated criminal acts have

17   shown that they are simply incapable of conforming to the norms of society as established by its

18   criminal law." Id. (citing Rummel v. Estelle, 445 U.S. 263, 276 (1980)).  Accordingly,

19   proportionality review must take this interest into account. Id.  The Court held that Ewing's sentence

20   of 25 years to life was justified by the State's public-safety interest in incapacitating and deterring

21   recidivist felons, and amply supported by Ewing's long, serious criminal record. Id.

22        In reviewing Petitioner's claim, this Court will begin with a brief overview of the Eighth

23   Amendment jurisprudence and the proportionality standard.  In Rummel, the Court upheld a life

24   sentence imposed under a Texas recidivist statute for a defendant convicted of obtaining $120.75 by

25   false pretenses, an offense normally punishable by imprisonment for two to ten years. Rummel, 445

26   U.S. at 266, 100 S.Ct. at 1135.  However, because he had two prior felony convictions (for

27   fraudulent use of a credit card and passing a forged check), and had served two prior prison terms,

28   the prosecution chose to proceed under the state's recidivist statute, which carried a life sentence. Id.

11

The Supreme Court held that Rummel's sentence of life imprisonment *with* the possibility of parole did not violate the Eighth Amendment.  Id. at 265-266 (emphasis added).  The Court noted that Rummel had suffered two separate convictions and terms of imprisonment for each prior, that he would be eligible for parole in twelve years, and that under the Texas recidivist statute, prosecutors retained the discretion not to invoke the statute for "petty" offenders.  Id. at 278-81.

Three years later, the Supreme Court set forth the criteria for finding a sentence to be cruel and unusual punishment under the federal Constitution and affirmed a decision of the Eighth Circuit holding unconstitutional a sentence of life imprisonment without the possibility of parole for a seven-time nonviolent felony recidivist.  Solem v. Helm, 463 U.S. 277, 103 S.Ct. 3001 (1983). Defining a three-part proportionality criteria, the Court concluded that Solem's sentence was grossly disproportionate to his crime of uttering a "no account" check for $100.00, even in light of his prior six nonviolent felony convictions: three for third degree burglary, one for obtaining money under false pretenses, one for grand larceny, and one for driving while intoxicated.  Id. at 279-81.  The Court emphasized that Solem's life sentence was far more severe than the sentence it had considered in Rummel, because Rummel was likely to be eligible for parole in twelve years, while Solem was given no possibility of parole at all.  Id.

In Harmelin, the defendant received a mandatory sentence of life in prison *without* the possibility of parole for possession of more than 650 grams of cocaine, his first felony offense.  501 U.S. 957 (1991)(emphasis added).  The Supreme Court upheld the sentence, with five justices agreeing, for varying reasons, that the sentence did not violate the Eighth Amendment.  Although the Court did not produce a majority opinion, seven justices favored some manner of proportionality review.  Justice Kennedy, joined by Justices O'Connor and Souter, stated that a noncapital sentence could violate the Eighth Amendment if it was "grossly disproportionate" to the crime, but concluded that courts need not examine the second and third factors of intrajurisdictional and interjurisdictional reviews discussed in Solem, unless "a threshold comparison of the crime committed and the sentence imposed leads to an inference of gross disproportionality."  Id. at 1005.

The majority of the justices in the Harmelin Court agreed that outside capital punishment, deeming a sentence cruel and unusual punishment is "exceedingly rare" due to the lack of objective

12

1    guidelines for terms of imprisonment.  501 U.S. at 964.  The threshold for such an inference of

2    disproportionality is high.  See id. at 1001 (Kennedy, J. concurring).  Generally, so long as the

3    sentence imposed by the state court does not exceed statutory maximums, the sentence will not be

4    considered cruel and unusual punishment under the Eighth Amendment.  United States v.

5    McDougherty, 920 F.2d 569, 576 (9th Cir. 1990).

6    　　　　The Harmelin Court concluded that the defendant's sentence did not meet the threshold

7    factor of "gross disproportionality."  Justice Kennedy stressed the serious nature of Harmelin's

8    offense, stating that the offense "threatened to cause grave harm to society" unlike "the relatively

9    minor, nonviolent crime at issue in Solem."  Harmelin, 501 U.S. at 1002.  Justice Kennedy further

10   noted that the "possession, use, and distribution of illegal drugs represent 'one of the greatest

11   problems affecting the health and welfare of our population.'" and that the quantity of cocaine

12   possessed by Harmelin had a potential yield of between 32,500, and 65,000 doses.  Id.

13   　　　　In this case, the last reasoned opinion on this claim was that of the California Court of

14   Appeal.  (Lodged Doc. 5, at 11-12.)  That court rejected the claim stating the following:

15   　　　　　　We have considered the factors set forth in In re Lynch (1972) 8 Cal.3d 410
     　　　　and restated in People v. Dillon (1983) 34 Cal.3d 441 and concluded that application
16   　　　　of three strikes law to defendant does not offend fundamental notions of dignity or
     　　　　shock the conscience. [Petitioner] is being punished not just for the current offense
17   　　　　but for his persistent recidivism.  Recidivism in the commission of multiple felonies
     　　　　presents a danger of [sic] that justifies the imposition of longer sentences for
18   　　　　subsequent offenses. (People v. Kinsey (1995) 40 Cal.App.4th 1621, 1630.)
     　　　　[Petitioner] has a lengthy criminal history beginning in 1969 when he was adjudged a
19   　　　　ward of the court for a theft offense.  He has suffered numerous prior felony
     　　　　convictions for offenses that are either inherently violent, such as assault with a
20   　　　　deadly weapon, or involve a serious risk of violence, such as attempted robbery or
     　　　　burglary.  Grants of probation, periods of parole, and numerous shorter terms of
21   　　　　imprisonment have all failed to curb [Petitioner's] continuous course of criminal
     　　　　conduct. [Petitioner] is a continuing threat to public safety.  That [Petitioner's]
22   　　　　sentence is more severe than that which could have been imposed in some other
     　　　　jurisdictions does not compel a contrary conclusion.  "[T]he needs and concerns of a
23   　　　　particular state may induce it to treat certain crimes or particular repeat offenders
     　　　　more severely than any other state." (People v. Cooper (1996) 43 Cal.App.4th 815,
24   　　　　827.) [Petitioner's] sentence is not grossly disproportionate to the crime and does not
     　　　　violate the federal and state prohibitions against cruel and unusual punishment.
25   　　　　(Rummel v. Estelle (1980) 445 U.S. 263, 285; People Copper, supra 43 Cal.App.4th
     　　　　815, 820-828.)

26   (Lodged Doc. 5, at 11-12.)

27   　　　　The Court of Appeal's decision was neither contrary to, nor an unreasonable application of,

28

1  clearly established federal law as determined by the Supreme Court of the United States.  In turning

2  to clearly established Supreme Court authority, Petitioner's instant offense and prior history falls

3  somewhere in between established Supreme Court authority.

4       First, Petitioner is not being punished for merely possessing .25 grams of cocaine.  (RT 138.)

5  Rather, he is also being punished for reoffending following his prior convictions for two attempted

6  robberies, assault with a deadly weapon causing great bodily injury, and two burglary convictions.  A

7  prison term of 25 years to life for a recidivist with five prior serious felony convictions, is not cruel

8  and unusual punishment under the Eighth Amendment.  (See Rummel v. Estelle, 445 U.S. 263

9  (1980).

10      Petitioner's offenses are either on the same level or more serious than the underlying offenses

11 in the cases discussed above.  Petitioner's crime of possession is more serious than Rummel's crime

12 of obtaining $120.75 by false pretenses.  Rummel, 445 U.S. at 266.  His crime is also more serious

13 than Solem's crime of uttering a "no account" check for $100.00.  Solem, 463 U.S. 279-281.

14 Moreover, Petitioner's sentence is less severe than Solem's because it does not preclude the

15 possibility of parole. Petitioner's offense is similar to the defendant's nonviolent offense of

16 possession of more than 650 grams of cocaine in Harmelin, although the amount Petitioner

17 possessed was substantially less.  Harmelin, 501 U.S. at 1005.  Although Petitioner's offense is

18 arguably more "passive" than the petty thefts in Andrade and Ewing, Petitioner's criminal history is

19 more extensive than Andrade, and more along the lines with Ewing, as Petitioner has suffered five

20 prior serious or violent felonies within the meaning of the California Three Strikes law, including

21 one of which caused great bodily injury.

22      Furthermore, as the Supreme Court stated in Ewing, "[i]n weighing the gravity of Ewing's

23 offense, we must place on the scales not only his current felony, but also his long history of felony

24 recidivism."  Id. at 1189-1190.  Petitioner's long and continuous criminal history demonstrates that

25 he is unable to avoid reoffending for any length of time.  Just as the Supreme Court found in Ewing,

26 Petitioner's sentence of 25 years to life is justified by the State's public-safety interest in

27 incapacitating and deterring recidivist felons, and is amply supported by Petitioner's long, serious

28 criminal record.  Id.

1    Accordingly, Petitioner's sentence, when compared with his underlying offense, does not

2    raise an inference of gross disproportionality and therefore does not violate the Eighth Amendment

3    of the Constitution.  The state court adjudication of this claim did not result in a decision that was

4    contrary to, or involved an unreasonable application of, clearly established Federal law, as

5    determined by the Supreme Court of the United States; nor did it result in a decision that was based

6    on an unreasonable determination of the facts in light of the evidence presented in the State Court

7    proceeding. 28 U.S.C. § 2254(d). The claim must be denied.

8                                           RECOMMENDATION

9        Based on the foregoing, it is HEREBY RECOMMENDED that:

10       1.    The instant petition for writ of habeas corpus be DENIED; and

11       2.    The Clerk of Court be directed to enter judgment in favor of Respondent.

12       These Findings and Recommendations are submitted to the assigned United States District

13   Court Judge, pursuant to the provisions of 28 U.S.C. section 636 (b)(1)(B) and Rule 72-304 of the

14   Local Rules of Practice for the United States District Court, Eastern District of California.  Within

15   thirty (30) days after being served with a copy, any party may file written objections with the court

16   and serve a copy on all parties.  Such a document should be captioned "Objections to Magistrate

17   Judge's Findings and Recommendations."  Replies to the objections shall be served and filed within

18   ten (10) court days (plus three days if served by mail) after service of the objections.  The Court will

19   then review the Magistrate Judge's ruling pursuant to 28 U.S.C. § 636 (b)(1)(C).  The parties are

20   advised that failure to file objections within the specified time may waive the right to appeal the

21   District Court's order.  Martinez v. Ylst, 951 F.2d 1153 (9th Cir. 1991).

22

23       IT IS SO ORDERED.

24       Dated:    April 20, 2006                          /s/ Dennis L. Beck
     3b142a                                       UNITED STATES MAGISTRATE JUDGE

25

26

27

28

                                              15